RECEIVED
APR 29 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ODELL & PHYLLIS KIMBLE | CIVIL ACTION NO. 1:09-cv-1798 |
| -vs- | JUDGE DRELL |
| STATE FARM FIRE AND CASUALTY COMPANY | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING AND ORDER

Before the Court is one of two motions for summary judgment by Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant") (Doc. 13).[1] This motion seeks summary judgment solely on Plaintiffs Odell & Phyllis Kimble's ("Plaintiffs") claims for damages, penalties, and attorney's fees due to Defendant's alleged "bad faith" in adjusting and paying their insurance claims. For the reasons given below, we PARTIALLY DENY and PARTIALLY GRANT Defendant's motion.

### BACKGROUND

Plaintiffs, Odell and Phyllis Kimble, own a home in Ville Platte, Louisiana, which sustained damage during Hurricane Gustav on or about September 1, 2008. Plaintiffs had a homeowners insurance policy with Defendant that was in full force and effect at the time of the damage. The policy apparently provided coverage of $275,251 for the dwelling under Coverage A; $27,525 for dwelling extensions under Coverage A; $206,438 for contents under Coverage B; and actual additional living expenses incurred under Coverage C.

---

[1] The other motion deals with distinct issues and is addressed in a separate ruling.

5

On September 3, 2008, the Kimbles initiated a claim with Defendant for their Hurricane damage. On September 10, 2008 an adjuster for Defendant apparently contacted the Kimbles about their damage. Two weeks later, Defendant contacted Plaintiffs again and scheduled a property inspection for October 11, 2008. It confirmed this date in another phone conversation with Plaintiffs on October 7, 2008.

On October 11, 2008, State Farm conducted the inspection. Later that month, it paid Plaintiffs $4,313.41 for wind-related damages its adjuster had ascertained, and it advised them that they could make additional claims for the damage to certain of their kitchen appliances and personal effects. It otherwise denied the remainder of Plaintiffs' claims and issued an appropriate letter of denial. Subsequently, Defendant issued payment to Plaintiffs for the losses related to the appliances and personal effects, including a reimbursement for a diagnostic test on December 15, 2008, and supplemental payments on December 24, 2008 and January 6, 2009. In total, State Farm has apparently paid Plaintiffs $8,099.91.

It is unclear what occurred in the subsequent nine months. Plaintiffs claim in their briefs – though without supporting affidavits – that they considered these payments grossly inadequate and verbally complained to Defendant repeatedly throughout this period. Defendant claims – and it cites to the lack of any documentary or other authenticated evidence in the record to the contrary – that it waited for Plaintiffs to bring any objections to its attention, but aside from sporadic phone conversations with Plaintiffs' daughter, it received none, nor any proof of the additional losses Plaintiffs now claim.

Regardless, by September 2009 Plaintiffs apparently had concluded that Defendant's payments were inadequate, and they consulted counsel and prepared to file this suit. Specifically,

on September 17, 2009, the same week they filed this action, they retained a contractor who physically inspected their property. He noted vastly more damage than had Defendant's adjuster, whose report, he claimed, incorrectly "omitted a number of damaged items." He valued the total damage to Plaintiff's residence at $47,452.46, a difference of almost $40,000, or five times what State Farm's adjuster had calculated.[2] With that report, Plaintiffs presented an itemized proof of loss claim to State Farm on January 4, 2010. Defendant has not made any payment on that amount since.

## ANALYSIS

### I. GENERAL LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 the Court will grant a party's motion for summary judgment only if:

> the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . . support[ing] the assertion by citing to particular parts of materials in the record.

Fed. R. Civ. P. 56. "'Material facts' are those facts 'that might affect the outcome of the suit under the governing law.'" *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 [1986]). The facts are reviewed with all "justifiable inferences" drawn in favor of the party opposing the motion. See *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy–that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

---

[2] This difference merely compares totals to totals. Plaintiff's expert's estimate includes some categories of damages that Defendant claims are not covered by the policy.

Once the movant shows there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), cert. denied, 521 U.S. 1112 (1997). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See *Anderson*, 477 U.S. at 249-50. Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. *Brock v. Chevron U.S.A., Inc.*, 976 F.2d 969, 970 (5th Cir. 1992).

**B. Louisiana Insurance Law Generally**

We apply Louisiana law in this diversity case. See *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

In Louisiana, an insurance policy "constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 516–17 (5th Cir. 2010) (quoting *Peterson v. Schimek*, 729 So.2d 1024, 1028 [La. 1999]); see also La. Civ. Code art. 1983 ("Contracts have the effect of law for the parties . . . ."). When an insurance policy is subject to interpretation, "[w]ords and phrases . . . are to be construed using their plain, ordinary and generally prevailing meaning," unless the words have acquired a technical definition. *Bradley*, 620 F.3d at 517. The policy as a whole must "be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA. REV. STAT. 22:881.

## II. PLAINTIFFS' CLAIMS

### A. Statutory Standards

Plaintiffs claim for the additional damage to their property which they say State Farm undervalued. As part of that claim – and at issue here – they claim penalties and attorney's fees under former LA. REV. STATS. 22:658 and 1220, now codified at 22:1892 and 1973.[3] These statutes establish the duties of an insurer in adjusting and paying claims, and they can impose additional penalties and other costs, depending on the circumstances, on insurers who violate these duties.

A claim under § 22:1892 exists when "(1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *La. Bag Co. v. Audubon Indem. Co.*, 999 So.2d 1104, 1112-13 (La. 2008).[4] An insurer found liable under this provision is

---

[3] The Fifth Circuit recently ruled on these statutes in a similar, though not entirely identical, case. *French v. Allstate Indemnity Co.*, Civil Docket No. 09-30209, (5th Cir. April 4, 2011). Much of this analysis is taken from that case.

[4] Louisiana Revised Statute 22:1892 provides that:
A. (1) All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured;
. . . .
(3) In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1973.

(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make such written offer to settle any property damage claim . . . within thirty days after receipt of satisfactory proofs of loss of that claim . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the inured, or one thousand dollars, whichever is greater, payable to the insured, . . . or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

responsible for the insured's attorney's fees and costs, as well as a penalty.

Section 22:1973 imposes on insurers the duties of good faith and fair dealing.[5] These duties include an obligation to adjust claims fairly and promptly, and are "separate and distinct from the duties mentioned in the contract of insurance." *Dickerson v Lexington Ins. Co.*, 556 F.3d 290, 303 (5th Cir. 2009). Certain violations, if knowingly committed or performed, constitute a breach of these duties and bad faith per se, including:

> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
> (6) Failing to pay claims pursuant to R.S. 22:1892 when such failure is arbitrary, capricious, or without probable cause.

LA. REV. STAT. 22:1973(B). Where an insured shows that the insurer breached its duty of good faith, she is entitled to general or special damages, as well as a penalty. LA. REV. STAT. 22:1973(C). To justify an award of damages, the insured must adduce sufficient proof—including causation—of the damages alleged. See *Consol. Co. v. Lexington Ins. Co.*, 616 F.3d 422, 434 (5th Cir. 2010)

---

[5] Louisiana Revised Statute 22:1973 provides that:
A. An insurer . . . owes to his insured a duty of good faith and fair dealing. . . . Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duty imposed by Subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

(6) Failing to pay claims pursuant to R.S. 22:1892 when such failure is arbitrary, capricious, or without probable cause.

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

("Damages [under this section] are awarded to compensate the insured for losses caused by the insurer's refusal to pay.").

An insured may seek penalties under both statutes, though he may only collect under one or the other. He may, however, collect both attorney's fees under Section 1892 and damages under 1973. *Dickerson*, 556 F.3d at 297.

A "satisfactory proof of loss" for purposes of these statutes is "only that which is 'sufficient to fully apprise the insurer of the insured's claims.'" *La. Bag Co.*, 999 So.2d at 1119 (quoting *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 [La. 1985]). "[P]roof of loss is a flexible requirement to advise an insurer of the facts of the claim," and "it need not be in any formal style." *Id.* (internal quotations omitted).

The initiation of loss adjustment "requires that the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." *Talton v. USAA Cas. Ins. Co.*, 981 So.2d 696, 706 (La. App. 4 Cir. 2008) (internal quotations omitted). "A reasonable interpretation of these two statutes indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith." *Oubre v. La. Citizens Fair Plan*, 53 So.3d 492, 505 (La. App. 5 Cir. 2010).

For our purposes, "arbitrary and capricious" has the same meaning under both statutes. Courts interpret the phrase to be synonymous with "vexatious." *Dickerson*, 556 F.3d at 297 (citing *Reed v. State Farm. Mut. Auto Ins. Co.*, 857 So.2d 1012, 1021[La. 2003]). "'Vexatious refusal to pay' means unjustified, without reasonable or probable cause or excuse." *Reed*, 857 So.2d at 1021. Although the insured has the burden of proof on this matter, once he has made a prima facie case the burden shifts to the insurer to rebut the insured's showing. *Dickerson*, 556 F.3d at 298. An insurer's

refusal to pay the full amount claimed will be arbitrary and capricious unless the insurer can show that the dispute has a good faith basis and defense. *Id.* (citing *Pendarvis v. Am. Bankers Inc. Co.*, 2008 WL 2280235, at *7-8 [M.D. La. 2008]); see also *Reed*, 857 So.2d at 1021.

## B. The Bases for Plaintiffs' Claims of Bad Faith

Plaintiffs claim that Defendant violated these statutes in three ways.

First, and most directly, they claim that the contractor's report they submitted in January 2010 – after commencing the present litigation – constitutes proof of loss. As Defendant has not tendered any payment on this claim, Plaintiffs assert, and Defendant offers no reason for its delay, Defendant stands in violation, without a good faith defense, of the 30 and 60 day payment periods required by the statutes.

Second, Plaintiffs claim that they submitted their claim on September 3, 2008, but Defendant did not inspect their property until October 11, 2008, more than 30 days from the date of submission. They claim that this delay violates Defendant's obligation "in the case of catastrophic loss, [to] initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant." LA. REV. STAT. 22:1892A(3).

Third, Plaintiffs point out that many of Defendant's alleged partial payments – approximately half of what they have received – came after the 60 day period in which Defendant is obliged to make payments, "after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." LA. REV. STAT. 22:1973B(5).

Regarding these last two bases, Plaintiffs claim that Defendant can present no defensible or even plausible reason why full payment – as calculated by their expert – was not made. In general, they claim that their expert's report shows that Defendant's adjustment so incorrectly describes – and

Defendant's subsequent payments therefore so grossly undervalue – their damages that it could only be attributable to Defendant's bad faith adjustment of their claim, and these payments are therefore arbitrary and capricious.

## C. Defendant's Replies

### 1. Defendant's reply to Plaintiff's first basis misleads the Court

Defendant replies to Plaintiff's first claim – of non-payment in response to Plaintiff's January 2010 submission – by pointing out that, at the time of that submission this litigation had already commenced, and, it claims, the above statutes do not apply to "post-litigation conduct," to actions taken by an insurer once suit has been filed. (Doc. 31, pp. 5-6). Its primary authority for this proposition is a federal district court case from 1991 which dealt with the statute less than a year after it had passed, almost as a matter of first impression.[6] *Premium Finance Co., Inc. v. Employers Reinsurance Corp.*, 761 F.Supp. 450, 452 (W.D. La. 1991).

This case does exist, and a sprinkling of federal district court cases since – almost none of which were seriously contested – have followed it. However, shortly after that case came down, a Louisiana appellate court disagreed with the federal district court's interpretation. In a thorough analysis of the statute and the federal district court's reasoning, the state court held that these statutes do apply to – and that an insurer can be assessed penalties for – so-called "post-litigation conduct" *Harris v. Fontenot*, 606 So.2d 72, 74 (La. App. 3 Cir. 1992). Other Louisiana appellate courts have since followed this court's lead, with none disagreeing. See, e.g., *Theriot v. Midland Risk Ins. Co.*, 664 So.2d 547 (La.App. 3 Cir. 1996). Most importantly, the Louisiana Supreme Court, in dicta, approvingly cited to these cases' holding that "the duties of good faith and fair dealing imposed on

---

[6] The statute became effective July 6, 1990, and the decision in that case was handed down April 15, 1991.

insurers by [these statutes] are continuing duties that do not end during litigation." *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 198 (La. 2008). Federal district courts have also since adopted this rule, see *Dagiumol v. State Farm Fire and Cas. Co.*, 2007 WL 2228158, at *1 (E.D. La. 2007), though, as noted, some continue to express confusion as to the correct rule, usually by noting the contrary authorities and reserving ruling on the issue. See *Holmes v. State Farm Fire & Cas. Co.*, 2009 WL 413501, at *1 (E.D. La. 2009); *Husseiny v. Indep. Fire. Ins.*, 1996 WL 637547, at *6 (E.D. La. 1996). The Fifth Circuit has never ruled on the issue. Obviously, when interpreting a state statute, we defer to the interpretation of that statute given by that state's own courts, particularly when its Supreme Court and all of its appellate courts are unanimous.

As defense counsel is no doubt aware, parties have a duty not to misinform the Court. This duty includes the obligation to bring contrary authority to our attention where it exists. We do not know why defense counsel successfully found every case – many of them unpublished – supporting its position, but missed every case to the contrary. This fact is particularly puzzling considering that all of these cases can be found in either Westlaw or Lexis by clicking on the convenient "citing authority" buttons next to the case names, and that Defendant was party to at least one of the suits in which these contrary cases were discussed. See *Holmes, v. **State Farm Fire & Casualty Co.**,* 2009 WL 413501 (E.D. La. 2009).

It is perhaps understandable, if not appropriate, if a party misses a single lower court case or presents conflicting material in a more ambiguous manner than strictly is warranted. That is not what defense counsel has done here, however. It flatly and repeatedly – in bold text – stated that "bad faith statutes do not apply to actions taken by an insurer once the litigation has commenced." (Doc. 31, p. 5). This assertion was presented as the current state of the law, without qualification.

Moreover, we note that it was made for the first time in Defendant's reply memorandum, rather than in its original summary judgment motion, though that motion otherwise featured seven pages of detailed analysis of cases on this topic, leaving Plaintiffs with no opportunity to correct Defendant's inaccuracies.

We consider this presentation misleading. We do not know if it was deliberate or negligent, though it is difficult for us to imagine that an experienced attorney with such an obviously capable grasp of this area of the law would not be aware of the disagreement at issue here. We are likewise unsure if this behavior is indicative of the conduct engaged in by Defendant in handling Plaintiffs' claim. Regardless, we consider it disreputable and inappropriate, and we advise Defendant in the strongest possible terms not to continue it in the future.

Regarding the point at issue, we obviously disagree with Defendant's characterization of the law – or at the very least, like our sister court in *Holmes*, we consider it an open question, 2009 WL 413501, at *1 – and find that post-litigation conduct is not excluded from Louisiana's insurance penalty statutes as a matter of law. Accordingly, making all reasonable inferences in favor of Plaintiffs, Defendant's failure to respond to Plaintiffs' January 2010 submission could be sufficient to place it in breach of its obligations to promptly pay or otherwise respond to Plaintiffs' claims within 30 or 60 days following submission of satisfactory proof of loss.

Additionally, we note that the report of Plaintiffs' expert resolves one of Defendant's other objections, that Plaintiffs do not support their claims with competent summary judgment evidence, such as an affidavit or deposition transcript. This report is on the record, and as explained here and below, is sufficient evidence from which a reasonable fact finder could rule in Plaintiffs' favor on these issues, including Defendant's alleged bad faith.

For these reasons, we find that Plaintiffs' claims for penalties and / or attorney's fees survive on this basis.

*2. Defendant's other replies are not misleading, but they do not dispose of Plaintiff's claims*

Regarding Defendant's second alleged breach of these statutes, that Defendant failed to initiate the loss adjustment process within 30 days, we are more skeptical of Plaintiffs' ability to maintain its claims on this basis. Specifically, Plaintiffs are correct that Defendant did not inspect their property until more than 30 days after they notified Defendant of their claim. However, Defendant did call them to schedule the inspection and apparently spoke with them about their claim within the 30 day time limit. Colloquially, that would seem to qualify as an "initiation" of the process, as Defendant "tak[ing] some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." *Talton*, 981 So.2d at 706.

We are not prepared to articulate a bright line rule on this point, however, as we can imagine scenarios where such a phone call would not suffice to initiate the process, for example, if Defendant called, but scheduled the actual inspection for months later. Otherwise, the parties present insufficient on point legal arguments on this topic for us to make a ruling. Further, we note that Plaintiffs' claim would survive in any case, and this basis would require the presentation of no additional evidence at trial. For these reasons, while we recognize the potential weakness of Plaintiffs' argument here, we do not find summary judgment on this basis appropriate at this time.

Regarding Plaintiffs' third ground, that some of Defendant's partial payments came more than 60 days after Plaintiffs first apprised Defendant of their claim, we agree with Defendant that Plaintiffs' contention is without merit. Defendant asserts more than adequate reason why it waited

to make these payments – it had not received sufficient documentation of these damages from Plaintiffs as to these items, and when it did receive such documentation, it paid promptly – and Plaintiffs present no contrary evidence to rebut Defendant's explanation. Accordingly, we regard this issue to be a question of fact settled in Defendant's favor, and we grant judgment in Defendant's favor on this basis.

Finally, regarding the issue of Plaintiffs' alleged lack of evidence that Defendant's failure to pay within 30 days was arbitrary or capricious, Plaintiffs claim that the disparity between the inspection of Defendant's adjuster and the report of their own expert constitutes independent evidence of Defendant's lack of good faith. Defendant responds that "without more, an insurer's payment of less than the full value of an insured's loss is insufficient evidence of arbitrary and capricious behavior for purposes" of the penalty statutes. (Doc. 13-1, p. 17) (citing *Dickerson*, 556 F.3d at 299). The court in *Dickerson* made such a statement; however, we find that Defendant misapplies it to this case.

In particular, this rule means simply that not every challenge and underpayment by an insurer that ultimately proves unsuccessful constitutes bad faith. The rule does not mean, as Defendant attempts to use it here, that any partial payment, no matter how small or disconnected from the demonstrable reality of Plaintiff's claim, exempts an insurer from all claims of bad faith. Were this the rule, then insurers could avoid all bad faith claims simply by immediately paying $1 in response to all loss claims, and plaintiffs could not use the massive amount of the underpayment and the arbitrary and capricious method by which their damages were calculated as evidence.

The difference between Defendant's argument and the actual rule, as noted, is the existence of something else besides the mere alleged underpayment – the dueling reports of Plaintiffs' and

Defendant's experts. As Defendant notes, whether any particular underpayment constitutes bad faith is judged by whether Defendant's proffered payment was "unjustified, without reasonable or probable cause or excuse," *Dickerson*, 556 F.3d at 297, whether "there exists a reasonable good faith defense to" the coverage claimed by Plaintiffs. (Doc. 31, p. 6). That Defendant paid something to Plaintiffs is insufficient to satisfy this standard if Plaintiff can show – or, on summary judgment, point to sufficient facts for a reasonable fact finder to conclude – that Defendant in fact did not have a reasonable good faith defense to the coverage claimed by Plaintiffs. Here, the report of Plaintiffs' expert is sufficient to put Defendant's defense in doubt, to make this issue a disputed genuine issue of material fact not amenable to resolution on summary judgment.

For clarity, we do not here determine that the mere fact that the report of Plaintiffs' expert may ultimately be proven to be closer to Plaintiffs' actual damages than that of Defendant's adjuster would by itself prove that Defendant acted in bad faith. See *Disaster Relief Svcs. N.C., LLC v. Employers Mutual Ca. Ins. Co.*, 2009 WL 935963 at *9 (W.D. La. 2009) ("An insurer is not required to accept an insured's estimate and tender payment in full to avoid bad faith claims . . . when there exists a reasonable good faith defense to coverage."). Rather, the fact finder would have to conclude, based on a comparison between the damages it determines Plaintiffs ultimately suffered – from the report of Plaintiffs' expert and Plaintiffs' own testimony – and the damages as described by Defendant's adjuster that the adjuster's inspection was so inaccurate and these damages were otherwise so self-evident that the disparity results, more likely than not, not from simple negligence but from bad faith, a vexatious refusal to pay. Plaintiffs suggest, based on the report of their expert, that the flaws in Defendant's inspection were so gross as ultimately to be of this nature. This evidence is on the record and such a conclusion based upon it would not be unreasonable. Therefore,

this issue presents a disputed issue of material fact not amenable to resolution on summary judgment.

## CONCLUSION

For the reasons given above, we find that Plaintiffs cannot maintain their claims of bad faith on the basis of Defendant's "late" partial payments, but that their claims potentially lie on the other bases they allege. Therefore, summary judgment on these other bases, and on Plaintiffs' claim in its entirety, as urged by Defendant, would be inappropriate. Accordingly:

IT IS ORDERED that Defendant's motion for summary judgment (Doc. 13) is PARTIALLY GRANTED with regard to Defendant's "late" partial payments, and PARTIALLY DENIED as to all other bases and the claims themselves.

SIGNED on this 14 day of April, 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE